ROGERS LUMBER COMPANY, a Corporation, Appellant, v. C. J. CLARK, Respondent.

(204 N. W. 184.)

**Guaranty — guaranty signed, without previous request, for no consideration except future advances to be made to principal debtor, does not become until notice of acceptance is communicated to guarantor by guarantee.**

1. Construing § 6656, Comp. Laws, 1913, which provides: "A mere offer to guaranty is not binding until notice of acceptance is communicated by the guarantee to the guarantor, but an absolute guaranty is binding upon the guarantor without notice of acceptance," and following Standard Sewing Mach. Co. v. Church, 11 N. D. 420, it is *held*, that a guaranty, signed by the guarantor without any previous request of the guarantee, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, is in legal effect a mere offer to guarantee, and does not become binding upon the guarantor until notice of acceptance is communicated by the grantee to the guarantor.

**Guaranty — agreement, extending time within which payment of principal obligation must be made without assent of guarantor, exonerates him from liability.**

2. An agreement extending the time within which payment of the principal obligation must be made, if without the assent of the guarantor thereof, and if binding on the creditor so as to prohibit him from enforcing the obligation for the extended period, exonerates the guarantor from liability, except so far as may be indemnified by the principal. Comp. Laws, 1913, § 6668.

Opinion filed May 16, 1925.

(Guaranty, 28 C. J. § 20 p. 900 n. 58; § 21 p. 901 n. 65, 67; § 25 p. 904 n. 96, 97; p. 905 n. 98; § 160 p. 1000 n. 36, 37 New.

Note.—(1) Offer to guarantee as distinguished from actual guaranty, see 12 R. C. L. 1067; 2 R. C. L. Supp. 1540.

(2) Discharge of guarantor by extension of time, see 12 R. C. L. 1084; 2 R. C. L. Supp. 1547; 4 R. C. L. Supp. 784.

Appeal from the District Court of Ward County, *Moellring,* J.

From a judgment in favor of the defendant, Clark, entered upon motion for judgment notwithstanding the verdict, plaintiff appeals.

Affirmed.

*McGee & Goss* and *J. C. Miller,* for appellant.

"To justify an order for judgment notwithstanding the verdict, the record must affirmatively show, not only that the verdict is not justified by the evidence, but it must also appear that there is no reasonable probability that the defects in the proof necessary to support the verdict may be remedied on another trial." Meehal v. G. N. R. Co. 13 N. D. 432, 101 N. W. 183.

"It is not sufficient to warrant such judgment that the evidence was such that the trial court ought to have granted either a motion for a directed verdict, or for a new trial on the ground of insufficiency of the evidence to sustain the verdict, but it must, also, appear that there is no reasonable probability that the defects in or objections to the proof necessary to support the verdict may be remedied upon another trial." First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125.

"A verdict will not be disturbed on appeal which is supported by at least some competent testimony, if no error of law has been committed by the court." Akin v. Johnson, 28 N. D. 205, 148 N. W. 535.

"On a motion to reverse a judgment on the ground of insufficiency of the evidence, the only question at issue is whether there is sufficient evidence to support the verdict, and the fact that there may be much evidence in contradiction thereof is immaterial." Oakland v. Nelson, 28 N. D. 456, 149 N. W. 337.

"Where there is nothing to show when the principal debt matures there can be no such extension of time as to discharge the guarantor, and in such a case the taking of a note for the principal debt payable at a specified time in the future is not such an extension of time as will release the guarantor, although he has no notice of the agreement under which the note is given. So, also, where the guaranty is of a continuing nature and does not limit or restrict the period of credit, any reasonable change as to the length of the credit will not release the guarantor from his liability thereunder, unless the extended period materially changes the contract of guaranty." 28 C. J. 1003; Manning v. Alger, 78 Iowa, 185, 42 N. W. 643; Tyson v. Reinecke, 25 Cal. App. 696, 145 Pac.

153; Emerson v. Dye, 4 Ky. L. Rep. 236; 6 Ky. L. 592; 13 Ky. Op. 247; Harvey v. First Nat. Bank, 56 Neb. 320, 76 N. W. 870.

"Under a contract of guaranty to cover an open account or other form of indebtedness to remain in force until notice, the guarantor's liability not to exceed a certain amount, his liability is not limited to the original term of credit given on a sale, and therefore the taking of the debtor's notes for goods sold on account after the account has become due does not release the guarantor." Burt v. Butterworth, 19 R. I. 127, 32 Atl. 167.

*T. S. Stuart,* for respondent.

"Judgment notwithstanding the verdict should not be rendered unless it clearly appears from the evidence that the party making the motion is entitled to it as a matter of law upon the merits if it appears probable from the record that a different showing can in good faith be made on another trial the motion should be denied." Ætna Indemnity Co. v. Schroder, 12 N. D. 110, 95 N. W. 436.

"The liability of a guarantor of payment is predicated wholly upon the terms of his contract with the guarantee. It is separate and distinct from the terms of the instrument on which it is endorsed. He is not a joint contractor with the principal debtor and does not agree to make the debt his own but only to answer for the consequences of his principal's default." Northern State Bank v. Bellamy (N. D.) 125 N. W. 888.

"A promise in writing stating that the promisor will hold himself liable for the value of the goods the promisee should be disposed of to furnish to a third person up to a certain amount, should the third person not pay as agreed upon, is a conditional guaranty and the promisor is entitled to notice of the acceptance of his proposal, the amount of goods furnished in pursuance thereof, and of the terms and time of payment, before he could be held liable." Rapelye v. Bailey, 3 Conn. 438, 8 Am. Dec. 199.

CHRISTIANSON, Ch. J. Plaintiff brings action upon the following written instrument.

"7/24/19—.

Rogers Lumber Co.,

Please let S. S. Kunkel have this bill of lumber, and I will guarantee payment. Better take his note.

C. J. Clark."

In its complaint the plaintiff alleges that under and pursuant to this instrument it "sold and delivered to the defendant, Kunkel, lumber and building materials and took his note therefor, said note was dated November 22nd, 1919, wherein and whereby defendant promised and agreed to pay to the plaintiff on September 1st, 1920, $289.95, with interest from November 22nd, 1919, at 10% per annum; that there is a credit on said note dated April 24th, 1920, by return of merchandise of $9.50; that thereafter as renewal of said indebtedness and including an additional item of lumber and building materials, included in said building, defendant S. S. Kunkel, executed to plaintiff his promissory note dated March 16th, 1921, wherein and whereby and by the terms thereof the defendant promised and agreed to pay to the plaintiff the sum of $327.32, together with interest thereon from March 16th, 1921, at 10% per annum." That no part of said indebtedness has been paid. The defendant Kunkel made default. The defendant Clark appeared and answered. In his answer the defendant Clark admitted that he signed the said instrument above set forth; and alleged that said instrument was attached to a certain bill of lumber, the value of which aggregated about $25.00; and that the said instrument was intended to, and did, apply to such bill only. The answer admitted the execution and delivery by Kunkel of the two notes set forth in plaintiff's complaint, and asserted that the defendant became released and discharged from all obligation by virtue of the extension of time granted to said Kunkel by reason of the execution and delivery by him to the plaintiff of the note dated March 16th, 1921, and the acceptance of such note by the plaintiff. The case was tried upon the issues thus raised. A verdict was returned in favor of the plaintiff and against the defendant, Clark, for the sum of $204.75, with interest at ten per cent. per annum from November 22nd, 1919. The defendant moved for judgment notwithstanding the verdict. The motion was granted, and plaintiff has appealed from the judgment.

The sole question before us is whether plaintiff is entitled to judg-ment notwithstanding the verdict. In other words, the question presented for determination is whether, upon the whole record, it clearly appears that plaintiff's alleged cause is so wholly devoid of merit as to entitle the defendant, Clark, to a judgment of dismissal upon the merits as a matter of law. First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125, Ann. Cas. 1917D, 1044.

The evidence adduced upon the trial shows that the plaintiff owns and operates a lumber yard at Crosby, North Dakota; that the defendant Clark is the president of a bank at Crosby and owns a controlling interest in such bank. The bank owned an eighty acre tract of land which it had rented to the defendant Kunkel; and Kunkel had purchased a quarter section of land from the bank on the crop payment plan. He had paid nothing on said contract at the time the instrument in suit was executed; but there is nothing to indicate that there was any default in the contract, and at the time of the trial he was still occupying the land covered thereby.

On July 24th, 1919, the defendant Kunkel went to the plaintiff's lumber yard at Crosby for the purpose of purchasing some lumber with which to repair or build a barn. It appears that a barn situated on the eighty acre tract had been damaged by a wind storm so that it became necessary to either repair it or build a new one. The defendants testified that if a new barn was built on the eighty acre tract, Kunkel was to have the right to remove it therefrom. Kunkel discussed the matter of what building material was necessary with the agent of the plaintiff and such agent prepared the statement of the items thereof. There is a conflict in the evidence as to the amount of materials so listed on such statement and the value thereof. It is undisputed, however, that Kunkel obtained building material aggregating in value $204.75. As regards the circumstances in which the instrument in suit was executed plaintiff's agent testified:

On direct examination:

Q. State the circumstances under which that was received by you. What led up to it?

A. Well, I figured a bill for him I think on a piece of paper. And

'then he said, give me the figures. And he took them out and he came back with this order.

Q. Had you refused him credit for that amount?

A. No I hadn't refused him credit: because we hadn't come to that point of the sale yet.

Q. Well, had you given him to understand that you wanted some security?

A. Well, I didn't really think there was going to be a sale, to start with. So I didn't talk very enthusiastic to him about making the sale. And when he came back with the order why I figured it was good enough and we would make a deal.

Q. And did you extend any credit on that order?

A. I did. . . .

On cross-examination:

Q. You didn't ask him to get Mr. Clark's guarantee? A. No.

Q. And you didn't know that he was going to get it till he come in with it?

A. No.

Q. You hadn't, in fact, sold him the goods at all? A. No.

Q. Had you questioned him at all about his financial ability, as to whether—and given him any idea as to whether or not he needed a guaranty?

A. Well not exactly; but I had been around and got posted up on a few of them as much as I could.

Q. Well you presumably told him he would have to have something—

A. No; there was nothing said about time. He just wanted to get the cost of a certain building. And when he come back with the order I just simply took it from that, that he was about ready to buy.

Kunkel testified as follows: That he went to plaintiffs' lumber yard at Crosby to procure some lumber; that plaintiffs' agent prepared an estimate of the building material required.

Q. When he had completed that what did you do, if anything, what conversation did you have with him about it?

A. Well I went in there to have that lumber you see, and he just said that he couldn't let me have that lumber. He said they had some guaranty—

Q. Then what did you say?

A. Well I said that probably I could get it if I go to the bank and see the banker.

Q. Well what did you do then?

A. Well I gave him the figures and went into the bank to see.

He further testified that the defendant, Clark, signed the instrument in suit, and that he (Kunkel) brought it back and delivered it to the plaintiff's agent.

Defendant's motion for a directed verdict and for judgment notwithstanding the verdict was based on the grounds: (1) "That the offer to guarantee was conditional and that the plaintiff did not inform the defendant of the acceptance of the offer;" (2) That "it appears from the pleadings and evidence introduced by the plaintiff that the plaintiff extended the time of the payment of the obligation offered to be guaranteed by this defendant without his knowledge or consent." In our opinion both grounds are well taken.

Under our statute (Comp. Laws, 1913, § 6656), "a mere offer to guaranty is not binding until notice of its acceptance is communicated by the guarantee to the guarantor; but an absolute guaranty is binding upon the guarantor without notice of acceptance."

By the terms of the instrument in suit the defendant Clark made the proposition to the plaintiff that if it would sell Kunkel the bill of lumber· that he would guaranty payment. His promise is in the future tense. He says "Please let S. S. Kunkel have this bill of lumber and *I will guaranty payment.*" Instruments couched in similar language have generally been construed as offers to guaranty and not as absolute guaranties. 1 Brandt, Suretyship & Guaranty, 3d ed. §§ 207–210.

However, we do not deem the language of controlling importance, for even though the language be construed as in the present tense, and as absolute and unconditional, yet under the laws of this state it would in legal effect constitute merely an offer to guarantee, and become binding upon the guarantor only upon notice of acceptance thereof by the guarantee. In Standard Sewing Mach. Co. v. Church, 11 N. D. 420, 92 N. W. 805, this court had under consideration a guaranty positive and absolute in terms, which had been executed by the guarantor and by him delivered to the principal debtor, and by the principal debtor delivered to the guarantee. The court held that the guaranty, in legal effect, con-

stituted merely an offer to guaranty, and did not become binding upon the guarantor until notice of acceptance thereof by the guarantee.

In the opinion in that case the court said:

" 'If the guaranty is signed by the guarantor at the request of the other party, or if the latter's agreement to accept is contemporaneous with the guaranty, or if the receipt from him of a valuable consideration, however small, is acknowledged in the guaranty, the mutual assent is proved, and the delivery of the guaranty to him or for his use completes the contract. But if the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is, in legal effect, an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract.'

"Applying these principles to the facts of this case as they are stipulated, we have no hesitation in reaching the conclusion that the instrument sued upon is a mere offer of guaranty, and that it never became a binding obligation upon the defendants because of plaintiff's failure to complete the same by communicating to the defendants a notice of his acceptance. . . . As has been seen, it was not executed by the defendants at the plaintiff's request, or in the presence of its agents, and the instrument acknowledges the receipt of no consideration from the guarantee to the guarantors, and there was no contemporaneous acceptance of it. On the contrary, it is expressly stipulated that it was signed by the defendants without request from plaintiff or its agents, and that they were not present when it was delivered by the defendants to Edmunds, and that the defendants were not present when Edmunds delivered it to the plaintiff. It amounted, then, merely to an offer or proposal which the plaintiff might accept or reject, at its option. If it desired to make the offer binding upon the defendants, it was not sufficient merely to accept and act upon it, but *it was required under the statute to communicate to the defendants notice of its acceptance. This was not done."* (11 N. D. 422, 423.)

The construction thus placed upon Section 6656, supra, has never been departed from. On the contrary it was re-adopted and re-affirmed in Aluminum Cooking Utensil Co. v. Rohe, 43 N. D. 433, 175 N. W. 620. And in our opinion the facts in this case bring it clearly within

the rule announced in these cases. For, in this case there is no evidence showing that the plaintiff's agent requested the defendant, Clark, to guaranty Kunkel's account. On the contrary, the agent of the plaintiff testified positively and unequivocally that he did not even ask Kunkel to get Clark's guaranty, and that he did not know that Kunkel was going to get it until he (Kunkel) brought the instrument in suit and delivered it to him (plaintiff's agent). The instrument in suit does not recite any consideration. There is no contention that plaintiff's agent and Clark met in person, and that the alleged guaranty was delivered by Clark to Kunkel. The undisputed evidence shows that at the time the instrument was executed by Clark no contract had been made between plaintiff and Kunkel. Clark delivered the instrument to Kunkel. Plaintiff's agent was not present at the time, nor had he had any negotiations with Clark before that time with respect to the matter. Clark was not present when the instrument was delivered to plaintiff's agent. There is no evidence, and no contention, that plaintiff notified Clark of acceptance of the proposed guaranty. According to the testimony of plaintiff's agent the first notice he gave to Clark was in the fall of 1920, when he demanded payment from Clark of the amount claimed due under the guaranty.

(2) We are also agreed that, even though the transaction be construed as one creating an absolute guaranty, the extension of time granted by the plaintiff to Kunkel exonerated the defendant from all liability. The alleged guaranty set forth no time of payment of the obligation guaranteed, but left this for arrangement between plaintiff and Kunkel. It was suggested that plaintiff take Kunkel's note. If this suggestion had been acted upon the debt, of course, would have become payable according to the terms of the note. No note was taken at the time the material was furnished, but in November, 1919, a note was taken, payable September 1st, 1920. The most favorable construction that can be put upon the taking of this note so far as the plaintiff is concerned is that this was in conformity with the suggestion in the alleged guaranty (and that is the averment in plaintiff's complaint). And, if so, the debt guaranteed became payable September 1st, 1920. The undisputed evidence shows that this note was renewed March 16th, 1921, by a note dated on that day and payable September 1st, 1921, and we find no evidence in the record to justify a holding that the defendant Clark

assented to such extension. Hence, we are entirely satisfied that there was such an extension of time as would operate as a discharge of the guarantor. Comp. Laws, 1913, § 6668; 12 R. C. L. p. 1084; Northern State Bank v. Bellamy, 19 N. D. 509, 31 L.R.A.(N.S.) 149, 125 N. W. 888.

At the close of the evidence, plaintiff's counsel asked leave to file a reply "to conform to the proof" setting forth that Clark was, in effect, an indirect purchaser, and had received the benefit, of the goods furnished under the guaranty; and that Clark was indemnified by his principal and, consequently, that the extension of time did not operate as a release under § 6673, Comp. Laws, 1913. The trial court refused to permit the reply to be filed and refused to submit to the jury the issue, which was sought to be raised thereby. The trial court was correct in so ruling. Under the evidence there is, we think, no basis whatever for the contentions thus advanced. The fact that Clark was the owner of a majority of the capital stock in a bank which had sold a tract of land to Kunkel and on which Kunkel still owed the purchase price, did not render Clark liable for building material purchased for the construction of buildings thereon; nor did it indemnify Clark within the purview of § 6673, Comp. Laws, 1913.

It follows from what has been said that the trial court was entirely correct in ordering judgment in favor of the defendant notwithstanding the verdict and that judgment is affirmed.

BIRDZELL, JOHNSON, NUESSLE, and BURKE, JJ., concur.