ED. SCHULENBERG, as Receiver of the Farmers National Bank of LaMoure, North Dakota, a Corporation, Respondent, v. FRED LONG, Appellant.

(221 N. W. 69.)

Opinion filed September 24, 1928.

*Wm. Maloney,* for appellant.
*Hutchinson & Lynch,* for respondent.

GRIMSON, Dist. J.   This is an action upon a promissory note brought by the receiver of the Farmers National Bank of LaMoure upon a note of the defendant, dated November 4th, 1924, and found by the receiver as one of the assets of the bank when he took charge in February, 1926.   The defense pleaded is that the note was without consideration and given for the accommodation of the bank.   Upon the issues so framed the case was tried to a jury.   At the close of the defendant's case and again at the close of the case, plaintiff moved for a directed verdict.   Defendant objected and made no motion for a directed verdict.   The jury found for the plaintiff as prayed for. A judgment upon the verdict was entered in favor of the plaintiff on the 19th day of November, 1927.   Defendant secured extension of time and a stay of proceedings and on March 23d, 1928, brought on for hearing a motion for an order vacating the judgment theretofore entered and for judgment notwithstanding the verdict or in the alter-

native asking for a new trial. To this motion were attached specifications of error and insufficiency of the evidence. Said specifications as far as they are not too general to mean anything were mainly that the evidence was insufficient to support the verdict. On March 23d the court made its order denying said motion and at the same time made its certificate certifying the transcript and identifying the exhibits. Thereafter the defendant's attorney noticed a motion for an order vacating the order refusing a new trial and for an order granting a new trial, attaching to said notice additional specifications of error and insufficiency of the evidence. These specifications are more specific than the former ones and include in addition objections to certain instructions of the court. This motion was heard by the trial court on the 13th day of April, 1928 and denied, the court refusing to vacate its former order and further ordering that no new trial be had. No appeal was taken from either order of the court denying a new trial but thereafter an appeal was taken to the supreme court from the judgment. No specifications of error whatever were served with the notice of appeal.

On appeal from a judgment this court has held that no specifications of error need to be served but that in such case the only matters considered by the appellate court will be such errors as appear upon the face of the judgment roll proper. Leu v. Montgomery, 31 N. D. 1, 148 N. W. 662; Wilson v. Kryger, 29 N. D. 28, 149 N. W. 721.

In this case no motion having been made by the defendant at the close of the trial for a directed verdict and no appeal taken from the trial court's orders denying the motions for a new trial this court cannot pass upon the sufficiency of the evidence to sustain the verdict. The only ways of bringing that matter before this court are by motion for a directed verdict or by motion for a new trial. Morris v. Minneapolis, St. P. & S. Ste. M. R. Co. 32 N. D. 366, 155 N. W. 861; Veum v. Stefferud, 50 N. D. 371, 196 N. W. 104; Lofthouse v. Galesburg State Bank, 48 N. D. 1019, 188 N. W. 585; Henry v. Maher, 6 N. D. 413, 71 N. W. 127. No appeal being taken from the court's order denying a new trial, the defendant is bound by said ruling of the trial court. Only intermediate orders of the trial court may be reviewed upon appeal from the judgment. Comp. Laws 1913, § 7842.

In the interest of justice, however, we have examined the record and are satisfied there was sufficient evidence to sustain the verdict.

Defendant complains of instructions given by the court concerning bankruptcy and also of certain remarks of the court made during the course of the trial concerning the effect of bankruptcy. The defendant objects to these instructions and these remarks, not on the ground that they state the law incorrectly, but on the ground that there was nothing in the case to warrant such remarks or such instructions. It appears, however, that the defense set up lack of consideration and in attempting to show the consideration for the note the plaintiff brought out on cross-examination of the defendant that before he went through bankruptcy the defendant owed the plaintiff bank more than the amount of this note. The court's remarks and instructions were to the effect that bankruptcy only prevented the creditor from using the ordinary remedies upon his note but that a debt was not wiped out and that there remained the moral obligation to pay it, which moral obligation would be sufficient consideration for the note if the jury found that the note was given to settle that moral obligation. This is a correct statement of the law. The remarks of the court excepted to were caused by objections of the defendant's attorney. For instance, in objecting to the question asked the defendant as to whether he owed the plaintiff bank any amount before bankruptcy, defendant's attorney said:

"Objected to as immaterial—the discharge has been pleaded and it is immaterial how much he owed them before that charge."

The court:

"Well, I don't know as to that—the existence of a debt does not wipe out—the giving them of the note after discharge in bankruptcy, might be a resumption of the old debt."

This is one of the remarks objected to and is a sample of the others, all of which were brought out as responses to the defendant's attorney's objections and in explanation of the ruling of the court, all during the examination of the defendant upon the matter of the consideration for the note. The defendant, himself, brought out the discharge in bankruptcy and introduced it in evidence. A large part of the examination of the defendant, both cross and direct, was directed to show the bankruptcy and what he owed before that. Under the circum-

stances we do not deem the remarks of the court or the instructions as given as prejudicial. They stated correctly the law and the testimony admitted was sufficient foundation for the charge of the court.

The defendant next complains of the instruction of the court upon the claim of the defendant that the note was given for the accommodation of the bank. The court charged on the theory of the decision of the supreme court in the case of Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903, that a receiver could maintain an action upon a promissory note even if it was given to the bank for its accommodation when the circumstances of the giving were that the defendant consented to its being used to keep the bank open, to become a part of the bank's asset, to benefit it, to be used as collateral; that then the defendant is estopped to say that he did not give it for full value and in such case the verdict should be for the plaintiff. Defendant argues that the facts shown at the trial are not sufficient to bring this case under the theory of the court in Vallely v. Devaney but that the decision in the case of Baird v. Miller, 56 N. D. 142, 216 N. W. 340 should control. We, however, think that the evidence sustains rather the theory of the Vallely Case that the note even if for the accommodation of the bank was put in there with the knowledge and consent of the defendant that it should be used as an asset and for the purpose of keeping the bank open which would be fraudulently deceiving anybody who examined the bank and making such person believe it was a good and valid asset of the bank. For instance, on the direct examination by Mr. Maloney the defendant makes the following replies (page 33 of transcript):

Q. Did you have a conversation with T. S. Hunt, at the time you gave him the note?

A. Yes.

Q. Do you remember what that conversation was?

A. Well, he begged me time and time before.

Q. Do you remember what the conversation was?

A. It was to give him a more—

Q. Yes or no—do you remember or do you not remember—answer I say, please—do you remember the conversation?

A. Yes.

Q. What was that conversation, as near as you can remember?

A. It was to give him a note—so that they could keep their doors open, otherwise it seemed as though the bank was in hard circumstances, and by having my note there it was like that much cash in the bank; that is as I understood it.

Again on examination by the court the defendant makes the following replies on page 41 of the transcript:

The court: Well, Mr. Hutchinson, let me butt in—I want to get something straightened out in my mind, and I will ask Mr. Long a question or two. Were you told at the time you say you gave this note, exhibit 1, that the bank was in bad shape—or that in substance?

A. Well, I think so—I think I was told if any more took bankruptcy and didn't pay up that the bank would have to close the doors.

The court: Did Mr. Hunt tell you this?

A. Yes, sir, he did.

The court: Did he tell you that he wanted this note for six thousand dollars—for the benefit of the bank—so that it could make a proper showing to the bank examiner?

A. Well, I don't think he mentioned examiner or anything—but for the bank— I don't know what he wanted to use it for.

The court: To show that the bank was in good standing and keep the doors open?

A. I suppose.

The court: Did he tell you that?

A. Well, he wanted it in the bank and keep it in good standing, yes.

The court: And you were willing that your note should be used for that purpose, were you?

A. As long as they kept the doors open I was willing to pay it; as long as I went through bankruptcy.

On redirect examination by Mr. Maloney on page 44 of the transcript:

By Mr. Maloney: Was that phrase used, that you will keep the bank in good standing?

A. Yes, it was—I wouldn't say just exactly those words "in good standing" but that meaning anyway—to have that much more collateral, as I understood it.

Q. Well now, you say you can remember the conversation had with Mr. Hunt, and did you—did he say that, Mr. Hunt, to you, that he wanted this note to keep the bank in good standing?

A. Yes, sir.

The note was given just a little over a year before the bank closed. There is therefore a great deal more in the case at bar to estop the defendant from asserting in this case a defense of an accommodation note than there was in the case of Baird v. Miller. Under the facts as they appear in the record the instruction of the court upon this matter was correct.

The defendant objects because the court instructed upon two theories, namely, that a debt owed before bankruptcy might be consideration and that even if the note were an accommodation note the receiver could recover under certain conditions. It is clear, however, that these were the two issues raised upon the evidence and was entirely proper for the court to instruct upon both of them. Defendant cites the case of First Nat. Bank v. Davidson, 48 N. D. 944, 188 N. W. 194. Other parties, however, were defendants there and their liability depended upon which theory the jury found on, also prejudicial evidence it was admitted under one theory. No such claim is made here. The court should instruct upon all the issues raised so that the jury could intelligently consider the same. Where two distinct theories are supported by the evidence the court should fairly instruct as to both. Branson, Instructions to Juries, 2d ed. pp. 70–73.

The defendant then complains the court did not submit to the jury his whole defense. He argues that a part of his defense was that the note sued upon was given for a credit to the defendant in order to purchase land from the bank, which consideration he claimed failed. No such defense is pleaded. The only evidence on it is as follows on page 33 of the transcript:

Q. What were you to get for this note?

A. That was to help—they was to help me out if I bought any land of—

Q. Did they ever advance you any money?

A. No, sir.

Q. Was there any land deal between you and them?

A. They offered several pieces of land—they always wanted to hold me up on it—

Q. Did they ever give you anything for the note?

A. No.

Q. Then you delivered it to Mr. Hunt, then according to that conversation then, that it was for the benefit of that bank?

A. Yes, sir.

On page 38 of the transcript defendant testifies in response to his attorney's questions:

Q. This—for what was this note given?

A. Merely for an accommodation note to—for the purpose of the bank.

It appears therefore that if any such claim was entertained it was abandoned by the defendant during the trial. No request was made for instructions on that point. Under the circumstances we do not think it was error to omit instructions upon that theory of defense. See above citation to Branson.

Next objection of the defendant is that the court invaded the province of the jury in advising them in answer to a question by a juror that the note sued upon was not a renewal of a previous note testified to but not introduced in evidence. There was some testimony that there was such renewal. If this was error it was certainly in favor of the defendant and he cannot complain thereof. He also claims that the instructions with regard to an accommodation note were error because the evidence shows payment upon the note. The claim of the defendant, however, was that it was an accommodation note and he was entitled to instructions thereon even if the plaintiff showed payments. There was no error on that ground.

Finding no prejudicial error in the record the judgment of the district court is affirmed.

Nuessle, Ch. J., and Burke, Birdzell, and Christianson, JJ., concur.

Burr, J., did not participate; Honorable G. Grimson, Judge of the Second Judicial District, sitting in his stead.